## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:

ASHANTI SMITH,                                    CASE NO.: 15-33076-DHW-13

    DEBTOR.

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### AND CO-DEBTOR'S STAY

COMES NOW Alabama Housing Finance Authority (hereinafter "Movant") and moves the Court for relief from the automatic stay and co-debtor stay, in order that it may proceed to pursue applicable non-bankruptcy remedies with regard to the property secured by a mortgage of Ashanti Smith and Michael Harris, as co-debtor, (hereinafter "Debtors") and as grounds for said motion says as follows:

1.  On or about October 30, 2015, Ashanti Smith petitioned this Honorable Court for debtor's protection pursuant to Title 11, Chapter 13 of the United States Code.

2.  Debtors' real property is encumbered by a mortgage which is attached hereto as Exhibit "A" and specifically made a part hereof.

3.  Movant holds a mortgage lien on this real property, commonly referred to in the attached mortgage as 3027 Baldwin Brook Drive, Montgomery, Alabama 36116.

4.  Cause exists for removing the automatic stay due to the fact that Movant's interest in said property is not adequately protected. 11 U.S.C. § 362(d)(1).

5.  Movant avers the mortgage is in default and Debtors are now three (3) months in arrears in post-petition mortgage payments (April 2017 through June 2017), as more fully described on the statement of loan account in the affidavit attached hereto as Exhibit "B."

6.     Debtors' failure to make post-petition mortgage payments demonstrates a continuing

default; consequently, if Movant is not granted relief from the automatic stay to

proceed with applicable non-bankruptcy remedies with regard to the property secured

by a mortgage, it will suffer irreparable injury, loss, and damage.

7.     Movant further asserts that the automatic stay should be lifted as such property is not

necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

8.     Movant avers that the fourteen-day stay of Fed. R. Bankr. P. 4001(a)(3) should be

waived, as Debtors filed for debtor's protection pursuant to Title 11, Chapter 13 of

the United States Code, and as such is on notice of the potential penalties for non-

compliance.

WHEREFORE, PREMISES CONSIDERED, Movant prays for the automatic stay to be lifted

pursuant to 11 U.S.C. § 362(d) to permit Movant to proceed to pursue applicable non-bankruptcy

remedies with regard to the property secured by a mortgage due to default in payments in accordance

with the provisions of said mortgage and the laws of the State of Alabama.

/s/Bowdy J. Brown
Attorney for
Alabama Housing Finance Authority
Our File No.: 49696.2413

OF COUNSEL:
SASSER, SEFTON & BROWN, P.C.
Post Office Box 4539
Montgomery, Alabama 36103-4539
(334) 532-3400

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing Motion to the parties listed below by placing a copy of the same in the United States Mail first-class, postage prepaid, on this the 5th day of July, 2017.

/s/ Bowdy J. Brown

Ashanti Smith
3027 Baldwin Brook Drive
Montgomery, Alabama 36116

Michael Harris
3027 Baldwin Brook Drive
Montgomery, Alabama 36116

Joshua C. Milam
Shinbaum & Campbell
566 S. Perry Street
Montgomery, AL 36104

U.S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Sabrina L. McKinney
Chapter 13 Trustee
Post Office Box 173
Montgomery, AL 36101

# EXHIBIT "A"

# NOTE

May 30, 2013
[Date]

MONTGOMERY
[City]

ALABAMA
[State]

3027 BALDWIN BROOK DRIVE, MONTGOMERY, ALABAMA 36116
[Property Address]

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means WR STARKEY MORTGAGE, L.L.P. and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of EIGHTY-EIGHT THOUSAND THREE HUNDRED SIXTY-NINE AND 00/100 Dollars (U.S. $ 88,369.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of THREE AND 500/1000 percent (3.500%) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **July 1, 2013**. Any principal and interest remaining on the first day of **June 1, 2043**, will be due on that date, which is called the "Maturity Date".

**(B) Place**

Payment shall be made at P.O. BOX 670325, DALLAS, TX 75267-0325, or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $396.82. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Other (specify):

☐ Growing Equity Allonge

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

_______ Initials

If Lender has not received the full monthly payment required by the Security Instrument, as described in paragraph 4(C) of this Note, by the end of 15 calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000 percent (4.000%) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

 Initials



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

   CAUTION-IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN
IT.

_____ [Seal]
ASHANTI SMITH

*[Sign Original Only]*

PAY TO THE ORDER OF  Alabama Housing Finance Authority

WITHOUT RECOURSE
WR STARKEY MORTGAGE, L.L.P.

BY:_____
PRINTED NAME:___Micah Berry____
TITLE:_____Banking_____

Pay to the order of

Without Recourse,
Alabama Housing Finance Authority

By: R. Stephen Nesmith
R. Stephen Nesmith
Single Family Operations Manager

FHA ALABAMA  FIXED RATE NOTE 10/95
Page 3 of 3
MortgageLaw 2009



After Recording Return To:
WR STARKEY MORTGAGE, L.L.P.
5055 W. Park Blvd., Suite 300
Plano, TX 75093

_____[Space Above This Line For Recording Data] _____
State of Alabama

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on May 30, 2013. The Grantor is ASHANTI SMITH AND MICHAEL HARRIS, WIFE AND HUSBAND ("Borrower"). This Security Instrument is given to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. WR STARKEY MORTGAGE, L.L.P. ("Lender") is organized and existing under the laws of the State of Delaware, and has an address of 5055 W. Park Blvd., Suite 300, Plano, TX 75093.

Borrower owes Lender the principal sum of EIGHTY-EIGHT THOUSAND THREE HUNDRED SIXTY-NINE AND 00/100 Dollars (U.S. $88,369.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on June 1, 2043. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS , with power of sale, the following described property located in MONTGOMERY County, Alabama:

SEE EXHIBIT 'A' ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.

Parcel ID Number: 1502032003008.000

which currently has the address of     3027 BALDWIN BROOK DRIVE
                                     (Street)
MONTGOMERY,           ALABAMA  36116      ("Property Address"):
(City)                         (Zip Code)



193.00
33.50
166.50

FHA Alabama Mortgage - 4/96 (rev. 02/01)
Page 1 of 10
MortgageLaw 2011



TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns), and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.



The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

    **3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

    First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

    Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

    Third, to interest due under the Note;

    Fourth, to amortization of the principal of the Note; and

    Fifth, to late charges due under the Note.

    **4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

    In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.



**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender, shall be immediately due and payable.

FHA Alabama Mortgage - 4/96 (rev. 02/01)
Page 4 of 10
MortgageLaw 2011



Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

FHA Alabama Mortgage - 4/96 (rev. 02/01)<br>Page 5 of 10<br>MortgageLaw 2011



**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.



**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substances or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

FHA Alabama Mortgage - 4/96 (rev. 02/01)
Page 7 of 10
MortgageLaw 2011



If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 13. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in MONTGOMERY County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et. seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

| | |
|---|---|
| ☐ Condominium Rider | ☐ Growing Equity Rider |
| ☐ Planned Unit Development Rider | ☐ Graduated Payment Rider |
| ☐ Adjustable Rate Rider | ☐ Other |specify] |



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

WITNESS(ES) (as to all signatures):

_JOHN C CASON_
Printed Name

_JOHN C CASON_
Printed Name

_____ [Seal]
ASHANTI SMITH

_____ [Seal]
MICHAEL HARRIS

FHA Alabama Mortgage - 4/96 (rev. 02/01)
Page 9 of 10
MortgageLaw 2011



_____ [Space Below This Line For Acknowledgment] _____

State of ALABAMA
County of __MONTGOMERY_____

    I, _____THOMASINA L. WILLIS_____ a Notary Public, hereby certify that ASHANTI SMITH AND MICHAEL HARRIS, whose name(s) is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he/she/they executed the same voluntarily on the day the same bears date.

    Given under my hand this 30th day of _____May, 2013_____, A.D. 20____.


_Thomasina L Willis_           [Seal]
Notary Public
THOMASINA L. WILLIS
Printed Name

My commission expires on____ 12-20-2015 _____

Prepared By:
JAY G. BEITEL
17806 IH 10 WEST, SUITE 450
SAN ANTONIO, TX 78257



Return To: Attorney John C. Cason
Entrust Solutions, LLC
1425 I-85 Parkway, Suite F
Montgomery, AL 36106

FHA Alabama Mortgage - 4/96 (rev. 02/01)
Page 10 of 10
MortgageLaw 2011



## EXHIBIT "A"

## LEGAL DESCRIPTION OF PROPERTY

LOT NUMBER ELEVEN, IN BLOCK NUMBER TWENTY-NINE, ACCORDING TO THE MAP OF WOODLEY PARK, PLAT NO. 14, AS THE SAME APPEARS OF RECORD IN THE OFFICE OF THE JUDGE OF PROBATE OF MONTGOMERY COUNTY, ALABAMA, IN PLAT BOOK 22, AT PAGE 270.



STATE OF ALA.MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT WAS FILED ON
RLPY 04446 PG 0941-0951 2013 Jun 03 10:24AM
STEVEN L. REED
JUDGE OF PROBATE

| | |
|---|---|
| INDEX | |
| REC FEE | $5.00 |
| CERT | $27.50 |
| MORTGAGE TAX | $1.00 |
| CHECK TOTAL | $132.60 |
| 195134 | $166.10 |

Clerk: #101 10:24AM

STATE OF ALABAMA )
                    :
COUNTY OF MONTGOMERY )

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the receipt and sufficiency of which are hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), (solely as nominee for Lender, WR Starkey Mortgage, L.L.P. and Lender's successors and assigns)** does hereby grant, bargain, sell, convey and assign unto **ALABAMA HOUSING FINANCE AUTHORITY, an Alabama Public Corporation, its successors and/or assigns,** all its right, title and interest in and to that certain Mortgage executed by Ashanti Smith and Michael Harris, wife and husband,, to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, WR Starkey Mortgage, L.L.P., and Lender's successors and assigns) dated 5/30/2013, which Mortgage appears of record RLPY Book 04446 Page 0941 in the Office of the Judge of Probate of Montgomery County, Alabama, together with the debt thereby secured and the property secured therein described.

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed by its duly authorized officer on this 20th day of November, 2015.

                                       **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), (solely as nominee for Lender, WR Starkey Mortgage, L.L.P., and Lender's successors and assigns)**

WITNESS:
BY:

                                       BY
                                       Its: Assistant Secretary

STATE OF ALABAMA )
                    :
COUNTY OF MONTGOMERY )

I, the undersigned authority, a Notary Public in and for said county in said state, hereby certify that Gregory E Beavers, whose name as Assistant Secretary of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), (solely as nominee for Lender, WR Starkey Mortgage, L.L.P., and Lender's successors and assigns)** is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the above and foregoing instrument, he/she, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation, acting in its capacity solely as nominee for Lender, WR Starkey Mortgage, L.L.P., and Lender's successors and assigns on the day the same bears date.

Given under my hand and official seal this the 20th day of November, 2015.

(Seal)
                                         Notary Public:
                                         My commission expires:

This instrument was prepared by:
Alabama Housing Finance Authority
Rob Griffith
P. O. Box 242928
Montgomery, AL 36124-2928

                                      My commission expires 09/18/2017

                                      STATE OF ALA. MONTGOMERY CO.
                                      I CERTIFY THIS INSTRUMENT WAS FILED C
                                      RLPY 04772 PG 0722 2015 Dec 11 11:45AM
                                      STEVEN L. REED
                                        JUDGE OF PROBATE
                                      E-FILED

                                      INDEX    $5.00
                                      REC FEE   $2.50
                                      CERT    $1.00
                                      ACH TOTAL$8.50
                                      E-RECORDED 254388Clerk: #101 11:49AM

# EXHIBIT "B"

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:

ASHANTI SMITH,                                      CASE NO.: 15-33076-DHW-13

     DEBTOR.

## AFFIDAVIT OF ROB GRIFFITH IN
## SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

Before me, the undersigned authority, personally appeared Rob Griffith, who being known to me and by me first duly sworn on oath, does depose and states the following:

1.

My name is Rob Griffith and I am employed as a Foreclosure/Bankruptcy Specialist at Alabama Housing Finance Authority ("Movant") and make this affidavit in such capacity. I have an understanding of how the books, records, and computer systems relating to loan servicing work at Movant. It is the normal course of business for Movant to maintain the records relating to the account of the Debtors within a reasonable time after the transaction they reflect. I have reviewed the books, records and payment processing related to the Note and Mortgage made by Movant described herein, and I am personally familiar with the account of the Debtors as denoted in this affidavit.

2.

The Debtor, Ashanti Smith, executed a Note in the principal amount of $88,369.00 on May 30, 2013, which Note is secured by a Mortgage, executed by Debtors, Ashanti Smith and Michael Harris, on the real property being more particularly described in Movant's Motion for Relief from Automatic Stay on file and as evidenced by the Note and Mortgage attached to Movant's said Motion. The subject Note with Movant bears a rate of interest as therein provided.

3.

I have prepared a statement of the loan account from the computer and other records that are maintained by Movant in the regular course of its business. The loan is in default for the post petition monthly installments of April 2017 ($1,028.97) and May 2017 through June 2017 ($696.03 each) (excluding attorney fees and costs). The statement of loan account is as follows:

| POST-PETITION DUE DATE | DATE RECEIVED | AMOUNT $ | MONTH APPLIED |
|---|---|---|---|
| 11/15 | 11/17/15 | 614.86 | 11/15 |
| 12/15 | 12/15/15 | 614.86 | 12/15 |
| 01/16 | 01/15/16 | 614.86 | 01/16 |

| Post-Petition Due Date | Date Received | Amount $ | Month Applied |
|---|---|---|---|
| 02/16 | 02/24/16 | 623.36 | 02/16 |
| 03/16 | 03/16/16 | 614.86 | 03/16 |
| 04/16 | 04/18/16 | 614.86 | 04/16 |
| 05/16 | 05/17/16 | 614.86 | 05/16 |
| 06/16 | 06/27/16 | 621.96 | 06/16 |
| 07/16 | 08/26/16 | 621.96 | 07/16 |
| 08/16 | 09/23/16 | 623.30 | 08/16 |
| 09/16 | 10/14/16 | 623.30 | 09/16 |
| 10/16 | 11/14/16 | 621.96 | 10/16 |
| 11/16 | 12/16/16 | 621.96 | 11/16 |
| 12/16 | 01/23/17 | 621.96 | 12/16 |
| 01/17 | 02/28/17 | 1804.16 | 01/17 |
| 02/17 | | | 02/17 |
| 03/17 | | | 03/17 |
| 04/17 | - | - | - |
| 05/17 | - | - | - |
| 06/17 | - | - | - |

4.

The aggregate amount owed through July 1, 2017 (excluding attorney fees and costs) is:

| | |
|---|---|
| Principal | $82,293.32 |
| Interest | 1,920.16 |
| Escrow Advance | 2,015.17 |
| Pro rata MIP | 177.62 |
| Late Charge Balance | 120.40 |
| Unpaid Other Fees | 150.00 |
| **TOTAL** | **$86,676.67** |

I hereby certify under penalties of perjury that the foregoing is true and correct this 28th day of June , 2017.

_____ (L.S.)
Rob Griffith

Sworn to and subscribed before me on this the 28th day of June , 2017.

_____
Notary Public
My commission expires:

ALLISON A. NELSON
My Commission Expires
May 16, 2018